UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHELLE GREYBILL, as Administrator of the Estate of John Greybill,<br><br>Plaintiff,<br><br>v.<br><br>NAPHCARE, INC., CITY OF HENDERSON, VERNON MANIAGO, MANDANA ZIAEI-GHAFOURI, IVY ROSE VOLONTE, EBONY MICHELLE GARNER, BRITTANY REYES, SHELDON CHASE, SELMA TABAKOVIC, SHEENA CARNATE, and JACKIE GONZALEZ<br><br>Defendants. | Case No. 2:24-cv-01276-CDS-EJY<br><br>ORDER<br>AND<br>REPORT AND RECOMMENDATION |

Pending before the Court is Plaintiff's Motion for Leave to Amend Complaint. ECF No. 45. The Court considered the Motion, the Response filed by the City of Henderson (the "City" or "Henderson") and Jackie Gonzalez (ECF No. 46), and Plaintiff's Reply. ECF No. 47. Succinctly, Plaintiff's Motion seeks to amend her Complaint to state a claim under the Americans with Disabilities Act ("ADA") based on the alleged failure to accommodate Plaintiff's disability. ECF No. 45 at 2:13-14.[1] Henderson, the only defendant against whom this claim is brought (ECF No. 45-1 at 17), opposes the Motion arguing the proposed amendment is futile because case law makes clear that the ADA does not provide a cause of action arising from a jail providing "deficient care for an inmate's medical or mental health conditions." ECF No. 46 at 4 (internal citation omitted). In Reply, Plaintiff argues her ADA claim is sufficiently pleaded, the amendment standard is lenient, the Defendants do not argue prejudice, and the determination of futility is more properly considered on a motion to dismiss. ECF No. 47.

---

[1] Plaintiff's Motion also seeks to correct the spelling of Defendant Ebony Michelle Garner's name. ECF No. 45 at 2. No opposition to this request was received by the Court. Thus, this request is granted. *See* LR 7-2(d).

1

I. **Relevant Facts**

Plaintiff originally filed her Complaint on July 15, 2024, after which the parties agreed to a May 2, 2025 date by which any motion to amend pleadings was to be filed. ECF Nos. 1, 29. Plaintiff filed the instant Motion on May 2, 2025 asserting only one substantive amendment to her Complaint—that is, to add her ADA claim. ECF Nos. 45, 45-1. To support her Title II ADA claim, Plaintiff, in Reply, points to paragraphs 34-38, 40-50, 52-57, 59, and 63-70 of the Amended Complaint (ECF No. 45-1). A review of these numerous paragraphs, which were not discussed in Plaintiff's moving papers, shows Plaintiff describes and or alleges:

- medical care or lack thereof provided by Defendant Mandana Ziaei-Ghafouri (*id*. ¶¶ 34-37, 50, 53);
- medical care or lack thereof provided by Defendant Ivy Rose Volonte (*id*. ¶ 38);
- John Greybill's ("Greybill") deteriorating medical and physical condition to which no one in the Henderson Detention Center ("HDC") is alleged to have responded despite supposed awareness (*id*. ¶¶ 40-42);
- defendant Ebony Michelle Garner's alleged failure to properly recognize or address Greybill's deteriorating condition (*id*. ¶¶ 43-46);
- the Henderson court's declaration that Greybill was incompetent, ordering him transferred to Rawson Neal Psychiatric Observation Unit at Southern Nevada Adult Mental Health Services ("Rawson"), of which HDC and NaphCare were allegedly aware, but which did not prompt adequate treatment or emergent care (*id*. ¶¶ 47-48);
- inadequate assessment and care provided by Defendant Sheldon Chase (*id*. ¶¶ 49, 56-57)
- a finding that Greybill had missed 12 meals, but a failure to act by Defendants Volonte and Brittany Reyes (*id*. ¶ 52);
- inadequate assessment and care provided by Defendant Selma Tabakovic (*id*. ¶¶ 54-55);
- inadequate assessment and care provided by Defendant Vernon Maniago (*id*. ¶ 59);
- release document completed by Defendant Jackie Gonzalez providing an "X" for Greybill's acknowledgement despite his physical and mental incapacities (*id*. ¶ 63);
- transport of Greybill from HDC to St. Rose Dominican Hospital while Defendants Maniago, Volonte, and Sheena Carnate were on-site, knew of Greybill's incapacities, and failed to take action to ensure Greybill was monitored (*id*. ¶¶ 64-65);
- a NaphCare employee misinformed EMTs of Greybill's physical and mental conditions (*id*. ¶ 66); and
- Greybill's walk-away from St. Rose (*id*. ¶¶ 67-68) resulting in his death (*id*. ¶ 70).

ECF No. 45-1 at 7-12.

Plaintiff further pleads that Henderson is a public entity as defined by the ADA; Greybill had a disability within the meaning of the ADA; Greybill was qualified "to participate in programs, services or benefits offered by the City of Henderson, including but not limited to medical and mental health services"; Title II of the ADA and 28 C.F.R. § 35.130(a) places on Henderson responsibility for "ensuring that individuals in its custody with known disabilities are provided with reasonable accommodations to prevent discrimination on the basis of disability and are not … excluded from participating in or denied the benefits of" the City's programs, services, or activities because of their disability; and that Greybill had a known disability, but was not reasonably accommodated by virtue of placing him in "segregated housing, failing to transfer him to the custody of … [Rawson] as required by court order, and releasing him from custody into an ambulance absent … supervision." ECF No. 45-1 at 18. Based on exclusion from programs, services or benefits described in the Amended Complaint, Plaintiff concludes Greybill was discriminated against in violation of the ADA. *Id*.

**II.    Discussion**

    A.    The Amendment Standard.

Federal Rule of Civil Procedure 15(a)(1) permits a party to amend its pleading once "as a matter of course" within twenty-one days of service. Fed. R. Civ. P. 15(a)(1). Outside this window, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Generally, leave is to be "freely given when justice so requires," and Rule 15 is to be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "In assessing the propriety of a motion for leave to amend, … [courts] consider five factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended … [her] complaint. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Futility alone can justify the denial of a motion for leave to amend. *Id*." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). It is within the court's discretion to determine whether to grant leave to amend, and "[a] district court does not err in denying leave to amend where the amendment would be futile." *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009).

Here, there is no argument, nor any evidence of bad faith, undue delay, or previous amendments. Henderson also does not argue prejudice. Instead, the City relies exclusively on futility in opposition to Plaintiff's effort to amend. Futility arises when the proposed amendment is legally insufficient. *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017). Plaintiff argues her claim is sufficiently pleaded; however, this misses Henderson's point—that is, the City contends there is no ADA claim that arises from the facts alleged because the ADA does not reach claims based on deficient medical care.

B.    Applicable Precedent.

1.    *Smith v. Las Vegas Metropolitan Police Department*.

The Court looks to *Smith v. Las Vegas Metropolitan Police Department*, Case No. 2:23-cv-00092-JAD-NJK, 2023 WL 10738598 (D. Nev. Dec. 1, 2023), for guidance when assessing the futility of Plaintiff's proposed ADA claim. In *Smith*, the plaintiff brought a claim arising out of the death of her son (James Perea), who was a Clark County Detention Center ("CCDC") detainee. CCDC had records documenting Perea's mental illness, and the facts show Perea told CCDC health care providers during his intake that he was withdrawing from an addiction to heroin. *Id*. at *1. Perea was placed in isolation rather than a medical unit and corrections officers tasked with monitoring Perea were not told of his withdrawal symptoms. *Id*. Thereafter, Perea was found vomiting blood and sent to the medical unit where he was given ineffective medication. *Id*. Two days later Perea was found unconscious on his cell floor. *Id*. A defibrillator was out of batteries and manual attempts to revive Perea were unsuccessful. *Id*. Perea's mother filed suit alleging a number of claims one of which was a Title II claim under the ADA.

The court in *Smith* held that "[t]o state a claim for disability discrimination under the ADA, a plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was because

of the plaintiff's disability." 2023 WL 10738598, at *3 (citing *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

The plaintiff in *Smith* argued the defendant discriminated against Perea—a disabled inmate—by placing him in segregation rather than in a medical unit thereby "exclude[ing] … him from access to adequate medical care." *Id.* at *4. The court held, however, that to the extent the plaintiff's claim was based on lack of access to medical care, the plaintiff did not state "a colorable claim" under the ADA because "the ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Id. citing Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010); and *Marlor v. Madison Cnty. Idaho*, 50 Fed.Appx. 872, 874 (9th Cir. 2002) (unpublished) (holding that inadequate medical care does not provide a basis for an ADA claim unless medical services are withheld due to discrimination on the basis of disability). The court further held that "allowing prisoners to utilize the ADA as a cause of action for not receiving medical treatment is simply making 'an end run around' a proper constitutionally based claim. … So in the context of prison-medical care, Smith cannot state a colorable ADA claim merely by alleging that … [the prison healthcare provider] did not provide … [the deceased] with adequate medical care to treat his schizophrenia or withdrawal symptoms." *Id. citing King v. Calderwood*, 2015 WL 4937953, at *2 (D. Nev. Aug. 19, 2015) (citing *Deeds v. Bannister*, 2013 WL 1250343, at *5 (D. Nev. Jan. 8, 2013)).

Regarding the duty to accommodate, the court held that any claim based on inadequate accommodations for medical needs also failed because the plaintiff would have to allege the decedent was not properly accommodated "because of a disability." *Id*. In the absence of facts showing the decision to place the decedent "in isolation was rooted in or a result of his schizophrenia," the plaintiff did not state an inadequate accommodation claim. *Id*. No leave to amend was granted by the court. *Id*.

        2.    *Out of District Case Law*.

There has been no occasion for *Smith* to be cited in Nevada since it was decided. However, over the last ten years in the State of Illinois, there have been several cases that discuss the application of the ADA to the provision of medical care to mentally ill incarcerated persons.

5

In 2015, the Central District of Illinois decided *Estate of Crandall v. Godinez*, Case No. 14-cv-1401, 2015 WL 1539017 (N.D. Ill Mar. 31, 2015). In *Crandall*, the father of the deceased inmate ("Crandall") sued the Illinois Department of Corrections ("IDOC"), its health care provider Wexford Health Sources, Inc. ("Wexford"), and two individuals. *Id*. at *1. Facts alleged include that after Crandall was accused of stealing from another prisoner he was placed in segregation, interrogated by an investigator, threatened with a year of segregation, and told his "mother would face consequences for the theft." *Id*. Later, but on the same day as the interrogation, Crandall committed suicide while inside his segregation cell. *Id*. Wexford, which provided health care to IDOC inmates, had a policy of seeing mentally ill inmates once every thirty days. *Id.* It appears undisputed that Crandall, who was previously labeled as seriously mentally ill by IDOC, was not seen by Wexford in the thirty days prior to his suicide; nor had he received other psychiatric services. *Id*. Rather, Crandall was prescribed medication to keep him quiet and restrained. *Id*. Those ordered or required to provide services or observation failed to do so on the day Crandall died. *Id*. at 2.

The proposed amended complaint considered by the court alleged Crandall was in need of a reasonable accommodation under the ADA, and that the Director of IDOC (a named defendant) failed to provide that accommodation when he (1) put Crandall in "a cell in which he could hang himself," (2) only provided "medication designed to keep him restrained and quiet," and (3) failed to provide security monitoring and adequate protection. *Id*. at 6. There was no allegation that Crandall was denied services provided to other inmates; however, the plaintiff alleged Wexford knew if it failed to "provide appropriate and effective care" to Crandall his condition would worsen. *Id.*

After discussing three cases in which viable ADA claims were stated, the court distinguished the case brought on behalf of Crandall. The court stated Crandall did not allege he was denied access to medical care, but instead alleged the care provided was inadequate and "qualitatively different from the type of medical care that non-disabled inmates received." *Id*. at 7. The court stated, however, that a claim based on an inmate's failure to receive proper treatment "for his mental illness … is distinctly different from a claim that … [an inmate] was denied access to medical services, and is not cognizable under the ADA." *Id*. (internal citations omitted). The court also rejected the claim

6

that placing Crandall in a segregation cell violated his ADA rights based on the lack of facts allowing the inference that the defendant placed Crandall "in segregation because of his disability or for reasons relating to his disability." *Id*. The court stated the cell "did not inhibit … Crandall's access to prison services to which he would have otherwise had access." *Id*. The court concluded the plaintiff failed to plead facts allowing for an inference that defendants denied Crandall services because of his disability and, on that basis, dismissed his ADA claim. *Id*.[2]

### C. Despite Detailed Allegations, Plaintiff Fails to State a Claim Under Title II of the ADA.

There is no dispute that Greybill was disabled under the ADA or that he was qualified to participate in or receive the benefit of services, programs, or activities offered by Henderson at HDC. However, Plaintiff fails to state a claim under the ADA because the allegations made all relate to the alleged inadequacy of the medical care or protection provided. ECF No. 45-1 ¶¶ 34-38, 40-50, 52-57, 59, and 63-70. Plaintiff points to the nurses (Maniago, Ziaei-Ghafouri, Volonte, Garner, and Reyes) and a social worker (Chase) who failed to provide adequate care and protection to Greybill while he was incarcerated and upon his release.[3] Plaintiff does not allege Greybill was denied services because he was disabled; instead, Plaintiff alleges Henderson repeatedly denied Greybill adequate medical and mental health care, as well as protection, ultimately leading to his death. *Id*.

Plaintiff's Motion to Amend states only the conclusion that Greybill was not accommodated. ECF No. 45 at 2. More specifically, Plaintiff's allegations regarding the failure to reasonably accommodate Greybill state only that this is demonstrated by virtue of placing him in segregation and releasing him to an ambulance rather than transferring him to Rawson. ECF No. 45-1 ¶¶ 108-109. There are no factual allegations that segregation prevented Greybill from accessing services *because of* his disability.

---

[2] *See also* two recent decisions from Illinois federal courts finding similarly: *Hilliard v. Mariscal*, Case No. 23-cv-00562, 2025 WL 588592, at *4 (N.D. Ill. Feb. 24, 2025) ("outright denials of medical care is actionable under the ADA, but provision of incompetent medical care is not.") (internal citations omitted); *Estate of Regan v. Baldwin*, Case No. 1:17-cv-1059-JEH, 2022 WL 20663133, at **11-12 (C.D. Ill. Nov. 21, 2022) (finding the plaintiff did not state an ADA claim when his allegations were based on the adequacy of medical treatment and protection).

[3] *See* ECF No. 45-1 at 5 identifying the professions of each of these defendants. *See also supra* at 2 summarizing Plaintiff's allegations.

1    A reasonable accommodation would be one that would allow a person with a disability to access otherwise unavailable services. *Crandall*, 2015 WL 1539017, at *7 *citing Kiman v. New Hampshire Dep't. of Corrections*, 451 F.3d 274, 288 (1st Cir. 2006) (accommodating a disabled inmate by allowing him a shower chair making bathing facilities accessible; cuffing a disabled inmate in the front rather than in the back allowing access to a cane so he can ambulate and access other services; providing a disabled inmate a bottom bunk making sleeping arrangements accessible). Plaintiff's allegations that placing Greybill in an ambulance headed to a hospital rather than in an ambulance headed to Rawson was a failure to accommodate is distinguishable as a disguised medical malpractice or 42 U.S.C. § 1983 claim. *See McDaniel v. Syed*, 115 F.4th 805, 828 (7th Cir. 2024) ("disagreement with treatment is different from cases where … a plaintiff offers evidence … [that he was] prevent[ed] … from participating in prison activities).

At the risk of redundancy, Plaintiff's claims are about repeated failures to provide appropriate and adequate care while Greybill was in HDC. As stated in *Smith*, 2023 WL 10738598, at *4, Plaintiff must show that Henderson, against whom this claim is brought (ECF No. 45-1 at 17), failed to properly accommodate Greybill's "medical problems because of a disability." Despite the depth of the allegations raised in the proposed amended complaint, no such allegation was made and there is nothing in what is stated that supports the conclusion that such allegations could be made. *Id*., *generally*.

### III.   Conclusion

Plaintiff has not alleged facts showing Henderson placed Greybill in segregation or provided inadequate care and protection because of his disability. For this reason, the Court finds Plaintiff has not pleaded a claim under Title II of the ADA. The Court further finds that given Plaintiff filed her Complaint over a year ago, a great deal of discovery has been completed, and the proposed amended complaint was obviously drafted with care, including 46 detailed factual allegations and nine causes of action, Plaintiff has not shown that she can plead true facts supporting a violation of the ADA. Thus, the Court recommends denial of Plaintiff's Motion for Leave to Amend Complaint to state a claim under the ADA.

### IV.   Order

IT IS HEREBY ORDERED that Plaintiff's Motion for Leave to Amend Complaint (ECF No. 45) is GRANTED to the extent it seeks to correct the spelling of Defendant Ebony Michelle Garner's name.

### V.   Recommendation

IT IS HEREBY RECOMMENDED that Plaintiff's Motion for Leave to Amend Complaint (ECF No. 45) be DENIED to the extent it seeks to add a claim under Title II of the Americans with Disabilities Act.

Dated this 29th day of August, 2025.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

### NOTICE

Under Local Rule IB 3-2, any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court holds the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). The Ninth Circuit also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).