UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Michelle Greybill, | Case No. 2:24-cv-01276-CDS-EJY |
| Plaintiff | **Order Affirming and Accepting the Order and Report and Recommendations of the U.S. Magistrate Judge, and Granting the Unopposed Motion to Strike** |
| v. | |
| NaphCare Inc., et al., | |
| Defendants | [ECF Nos. 45, 50, 69, 70, 71, 78, 80, 82] |

This is a civil rights action brought by Michelle Greybill, as administrator of the estate of John Greybill, against defendants NaphCare, Inc., the City of Henderson, Vernon Maniago, Mandana Ziaei-Ghafouri, Ivy Rose Volonte, Ebony Michelle Garner, Britanny Reyes, Sheldon Chase, Selma Tabakovic, and Sheena Carnate.[1] *See* Compl., ECF No. 1. The complaint arises from John Greybill's untimely death in July 2022. *See id.* Michelle alleges that the defendants violated § 1983 by failing to provide adequate medical care to John, which resulted in a state-created danger given John's mental health at the time of his death and deprived John of due process. *Id.*

On August 29, 2025, and September 12, 2025, respectively, U.S. Magistrate Judge Elayna J. Youchah issued orders and reports and recommendations (R&R) resolving Michelle's motions for leave to amend the complaint. *See* R&R-1, ECF No. 69; R&R-2, ECF No. 71. Michelle objects to R&R-1. Obj.-1, ECF No. 70. Only the City filed a response to Michelle's objection. City resp., ECF No. 79.

Defendants Naphcare, Inc., Vernon Maniago, Mandana Ziaei-Ghafouri, Ivy Rose Volonte, Ebony Michelle Garner, Britanny Reyes,[2] Sheldon Chase, Selma Tabakovic, and Sheena Carnate filed objections to R&R-2. Obj.-2, ECF No. 78. The City of Henderson filed a limited objection

---

[1] The complaint also brought claims against Jackie Gonzalez, however that defendant has since been terminated. *See* Stip. dismissing J. Gonzalez with prejudice, ECF No. 103.

[2] Counsel for Reyes advises that Reyes's name is spelled incorrectly. The Clerk of Court is kindly directed to correct the spelling of Reyes's first name to Britanny.

to R&R-2. Obj.-3, ECF No. 80.[3] Michelle filed a response to both objections. Pl.'s resp., ECF No. 84. Finally, the City of Henderson also moves to strike Michelle's reply (ECF No. 81) to her own objection. Mot., ECF No. 82. The motion to strike is unopposed. For the following reasons, I affirm and adopt the R&Rs, and I grant the unopposed motion to strike.

I.      Background[4]

As set forth in the first amended complaint, in late 2018, John began to exhibit uncharacteristic and odd behavior. *See* ECF No. 1 at 5, ¶ 28. A year later, John experienced his first psychotic episode and was subsequently diagnosed with schizoaffective disorder. *Id.* at ¶ 29. Thereafter, he was also diagnosed with bipolar disorder and severe major depressive disorder. *Id.* As a result of the mental health diagnoses, John was hospitalized multiple times between 2019 and his death in 2022 and was prescribed several different types of medications. *Id.* at ¶¶ 30, 32.

On July 13, 2022, John was arrested at a family member's home. *Id.* at 6, ¶ 33. As a result, he was transported to the Henderson Detention Center. *Id.* While in custody, John was treated by defendant Ziaei-Ghafouri, a NaphCare nurse, who requested an urgent mental health evaluation for him. *Id.* at 6. Although nurse Ziaei-Ghafouri requested that urgent evaluation, John was not evaluated or treated for several days. *Id.* at ¶ 37. Two days after John's arrest, defendant Volonte reviewed Ziaei-Ghafouri's screening information regarding John, learned that an urgent mental health evaluation had been ordered but not completed, and learned that John had no access to psychotropic medication to treat his mental health conditions. *Id.* at 7, ¶ 38.

On July 18, 2022, John underwent a competency evaluation by Dr. Greg Harder. *Id.* at ¶ 39. At the conclusion of the evaluation, Dr. Harder determined John was incompetent and was considered a danger to himself or others until his competency was restored. *Id.*  The same day John underwent the competency evaluation, John stopped eating, and he refused to eat for days.

---

[3] The City of Henderson (hereinafter, "the City") filed an errata to its objection to correct a citation. Errata, ECF No. 93. The court acknowledges and accepts the errata in its resolution of the pending objection.

[4] The court cites to the complaint to provide background regarding this action. Citations to the complaint do not serve as a finding of fact.

*See id.* at ¶¶ 40–41. As alleged, while NaphCare and Henderson Detention Center employees knew John was not eating and still was not receiving mental health treatment, they did nothing to assist him. *Id.* Instead, he was moved to a segregated cell. *Id.* at ¶ 42. At some point, defendant Garner evaluated John while he was in segregation, which Michelle alleges was "woefully inadequate." *Id.* at ¶ 45. Garner was also involved in John's care between July 18–20, 2022. *Id.* at ¶ 46.

On July 21, 2022, a Henderson municipal court judge declared John incompetent to stand trial and ordered him transferred to the Rawson Neal Psychiatric Observations Unit for inpatient mental health treatment as soon as a bed became available. *Id.* at 8–9, ¶ 47. That same day, John was seen by defendant Sheldon Chase, a social worker, and Ziaei-Ghafouri. *Id.* at 9. The following evening, on the 22nd, detention center staff initiated their hunger-strike protocol for John. Thereafter, John was seen by other defendants between July 22 and 23rd, but despite John's obvious mental health crisis, no defendant administered necessary treatment or care to him. *See id.* at 10–11.

Despite the order to send John to Rawson Neal for competency restoration, a different Henderson municipal judge issued an order releasing John from custody on a "medical O/R [own recognizance]." *Id.* at 11, ¶ 62. John was then transported by ambulance from the Henderson Detention Center to St. Rose Dominican Hospital. *Id.* at 11, ¶ 64. Once at St. Rose, in the depths of a mental health crisis, John refused care and left the emergency department. *Id.* at 12. The following day, John was found deceased in a ditch across the street from St. Rose Hospital. *Id.* at ¶ 70.

## II.    Legal standard

A party may file specific written objections to the findings and recommendations of a United States magistrate judge made pursuant to Local Rule IB 1-4. 28 U.S.C. § 636(b)(1)(B); LR IB 3-2. Upon the filing of such objections, the court must conduct a de novo analysis of the legal determination of those portions of the report to which objections are made. *Id.* The court

may accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1); LR IB 3-2(b). The district court reviews the magistrate judge's decision under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); LR IB 3-1(a) ("A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case under LR IB 1-3, when it has been shown the magistrate judge's order is clearly erroneous or contrary to law.").

The "clearly erroneous" standard applies to a magistrate judge's factual findings, whereas the "contrary to law" standard applies to a magistrate judge's legal conclusions. *See, e.g., Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991). A magistrate judge's finding is "clearly erroneous" if the district judge has a "definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "[R]eview under the 'clearly erroneous' standard is significantly deferential." *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623 (1993).

Further, a magistrate judge's order on a pre-trial motion is subject to a lower standard of review (contrary to law standard) than reports and recommendations (de novo review). *Compare* LR IB 3-1(a), *with* LR IB 3-2(b). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *UnitedHealth Grp., Inc. v. United Healthcare, Inc.*, 2014 WL 4635882, at *1 (D. Nev. Sep. 16, 2014) (citation omitted). The district judge "may not simply substitute its judgment" for that of the magistrate judge. *Grimes*, 951 F.2d at 241. A district judge may reconsider any non-dispositive matter that has been finally determined by a magistrate judge "when it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). "[R]eview under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Sec. Farms v. Int'l Brotherhood of Teamsters*, 124 F.3d 999, 1014 (9th Cir. 1997).

III.   Discussion

   **A.  Judge Youchah's order and report and recommendation [R&R-1, ECF No. 69] is affirmed and accepted in full.**

   In R&R-1, Judge Youchah recommends that I deny the plaintiff's request to add an ADA claim. ECF No. 69 at 7. Judge Youchah explains that while the allegations made all relate to the alleged inadequacy of the medical care or protection provided to John, it fails to adequately allege that John was not accommodated, or alternatively, was placed in segregation, because of his disability.[5] *See id.* at 7–8. As a result, Judge Youchah concluded that despite significant discovery having been completed, the plaintiff failed to show an ADA violation could be properly pleaded because the proposed ADA claim did not include allegations "showing [the City] placed [John] in segregation or provided inadequate care and protection because of his disability." *Id.* at 8.

   Michelle objects to R&R-1, arguing that the proposed amended complaint sufficiently alleges an ADA violation because there was no question that the Henderson Detention Center was aware of John's disability (mental illness), yet the defendants refused to accommodate his disability. *See* ECF No. 70 at 5–7. Michelle also argues that Judge Youchah misconstrued the relevant standard for pleading an ADA reasonable accommodation claim, arguing that the finding sounds in disparate treatment, not reasonable accommodation. *Id.* at 7–8. Finally, Michelle argues that Judge Youchah erred in her determination that permitting amendment to add the ADA claim was futile because the proposed ADA claim "does not merely allege that [John] was denied adequate medical care," but is "grounded in allegations that [the City] failed to provide reasonable accommodations which would have permitted him access to the 'fundamentals of life,' including food, housing, and medical care." *Id.* at 9.

---

[5] Judge Youchah also issued an order granting Michelle's motion for leave to amend the complaint to the extent she sought to correct the spelling of defendant Garner's name.[5] ECF No. 69 at 9.

The City opposes Michelle's objection to R&R-1, asserting that Judge Youchah's findings was neither clearly erroneous nor contrary to the law, so it should be affirmed. ECF No. 79.[6] The City asserts that the plaintiff seeks to inappropriately transform a purported ADA claim into one for medical malpractice, and further that deficient care does not equate to discrimination based on disability. *See id.* at 6–11.

As a threshold matter, it is undisputed that John's mental illness qualifies as a disability under the ADA. So attempting to bring this claim is not inappropriate. But a qualifying disability does not automatically give rise to an ADA claim. Rather, in this Circuit, to state a colorable claim under the ADA, a plaintiff must allege discrimination because of disability, not inadequate treatment or care for a disability. *See Simmons v. Navajo County*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."); *see also Marlor v. Madison County*, 50 Fed. Appx 872, 874 (9th Cir. 2002) (unpublished) (holding that inadequate medical care is not a basis for an ADA claim unless the medical services were withheld due to disability discrimination). And given that discovery had already been completed at the time the motion to amend was filed, I agree with Judge Youchah that the limited allegations in the proposed ADA claim are merely an attempt to re-allege the claim for inadequate care or treatment for John. The two claims incorporate the same general allegations,[7] so the only distinctions are as follows:

| Failure to provide medical care | Proposed ADA claim |
|---|---|
| ¶ 76.    In the manner described more fully above, the Individual Defendants undertook the decision to act or not to act purposefully, knowingly, and/or recklessly. | ¶ 110.   Despite John Greybill's known and obvious disability, the City of Henderson failed to reasonably accommodate his disability, as described herein, including by placing him in segregated housing, failing to transfer him to the custody of SNAMHS as required by court order, and releasing him from custody into an ambulance absent any supervision. |

---

[6] This response was erroneously linked to ECF No. 69, instead of the objection docketed at ECF No. 70.
[7] *See* ECF No. 50-1 at ¶¶ 74, 104 ("Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.").

| ¶ 77.   In the manner described more fully above, the Individual Defendants undertook the decision to act or not to act purposefully, knowingly, and/or recklessly. | ¶ 111.   Because of John Greybill's disability, the City of Henderson excluded and denied him access to each program, service, or benefit described herein. Thus, John Greybill was subjected to discrimination in violation of the ADA. |
|---|---|
| ¶ 78.   As a result of the Individual Defendants' unconstitutional and unlawful misconduct, Mr. Greybill experienced injuries, including but not limited to physical pain and suffering, emotional distress, and death. | ¶ 112.   As a result of the City of Henderson's discrimination, John Greybill suffered injuries, including pain and suffering, and ultimately death. |

The decision "to act or not to act purposefully, knowingly, and/or recklessly" directly relates to the allegations that the defendants placed John in segregated housing, failed to transfer him to the custody of SNAMHS, and released him from custody into an ambulance absent any supervision. And each of the latter allegations are necessary to address John's disability. This is insufficient.

At this stage of the litigation, to be entitled to amendment, the proposed ADA claim would need to include non-conclusory allegations that the City failed to properly accommodate John's mental health issues because of his disability, and those allegations "must allege that he was denied 'medical services beyond those necessary for treating his underlying disability.'" *Atayde v. Napa State Hospital*, 255 F. Supp. 3d 978, 1002 (E.D. Cal. 2017) (collecting cases where ADA claims were properly pleaded). But that is not what is alleged here. Rather, the proposed ADA claim contains no allegations explaining what or how John was excluded from or denied benefits, or how the City's actions constituted a failure to accommodate, especially given John was seen by medical professionals and underwent a competency evaluation. *Compare Hernandez v. Cnty. of Monterey*, 110 F. Supp. 3d 929, 954 (N.D. Cal. 2015) (finding that the plaintiffs provided "significant evidence that Defendants violate[d] the ADA by offering exercise, religious services, Choices and Pride classes and Narcotics and Alcoholic Anonymous meetings" in locations that were inaccessible to inmates who could climb stairs and were therefore excluded from participation); *Barnett v. Cty. of Los Angeles*, 2021 U.S. Dist. LEXIS 40959, at *30–31 (C.D. Cal. Mar.

4, 2021) (plaintiff's sufficiently plead an ADA violation with allegations that the defendants knowingly and willfully deprived plaintiff of his medications for several weeks, received no mental health evaluation or treatment, despite his known history of suicidal tendencies, the defendant had knowledge or reason to know of plaintiff's disability); *Figuracion v. Salem Cnty.*, 2026 U.S. Dist. LEXIS 30091, at *10 (D.N.J. Feb. 13, 2026) (district court denying motion to dismiss because plaintiff alleged that the county's policies and supervisory practices resulted in failure to implement adequate monitoring and suicide-prevention measures despite knowledge of inmate's extensive psychiatric history and documented suicide risk); *Wilkerson v. Sarver*, 2026 U.S. Dist. LEXIS 81472, at *10–11 (W.D. Pa. Apr. 14, 2026) (plaintiff properly pleaded an ADA claim where he alleged that despite knowing that he was a qualified disabled individual, the county failed to provide him with any reasonable accommodations by (1) failing to adequately educate and train its correctional officers about mental health issues and the use of appropriate de-escalation tactics during encounters with inmates with mental health disabilities, (2) corrections officers routinely exerting force on inmates even though they are exhibiting symptoms of their psychiatric disabilities, (3) the county failing to take plaintiff's psychiatric disability into account when communicating with him and using force against him so he was deprived safe security practices and fair disciplinary procedures, and (4) plaintiff asserting that proper training could have prevented the excessive force applied by the individual defendants).

The City asserts that the plaintiff's proposed ADA claim is essentially identical to *Smith v. Las Vegas Metropolitan Police Department*. ECF No. 79 at 8 (citing 2023 WL 10738598 (D. Nev. Dec. 1, 2023)). At this stage of the litigation, the limited allegations in the proposed ADA claim are indeed akin to the *Smith* case. *See* 2023 WL 10738598, at *4. Stated otherwise, the proposed ADA claim is an attempt to bring a medical malpractice claim, which is not permitted.

Consequently, Michelle fails to demonstrate that Judge Youchah's recommendation was contrary to the law or clearly erroneous, so Michelle's objection is overruled. Judge Youchah properly recommended that the motion to amend be denied in part because Michelle failed to

include sufficient allegations showing that the City's actions were because of John's disability. Accordingly, I adopt and affirm Judge Youchah's recommendation that Michelle be denied leave to add a claim under the ADA. The motion to amend to add the proposed ADA claim is denied.

**B.   The defendants' appeals of the order permitting Michelle to proceed in her individual and official capacities, as set forth in R&R-2 [ECF No. 71], are denied.**

In R&R-2, Judge Youchah recommends that I deny leave to add John's daughters as plaintiffs to this action, finding that amendment was not timely because they could have been added sooner in time, but counsel failed to do so as result of a lack of diligence. *See* ECF No. 71 at 5–6. No objections were filed to this recommendation,[8] so it is hereby adopted and affirmed.

Judge Youchah entered an order granting leave to allow Michelle to proceed in her individual capacity, not just in her capacity as the administrator of John's estate. *Id.* at 6–7. NaphCare, Inc., Vernon Maniago, Mandana Ziaei-Ghafouri, Ivy Rose Volonte, Ebony Michelle Garner, Britanny Reyes,[9] Sheldon Chase, Selma Tabakovic, and Sheena Carnate appeal that decision. In their objection to R&R-2, they argue that Michelle failed to demonstrate good cause for the delay in seeking to proceed in her individual capacity because she sought amendment after the scheduling order in this action had expired. ECF No. 78. The City also filed an appeal objecting to the order permitting Michelle to proceed in her individual capacity. ECF No. 80. Therein, the City argues that the order is not a "clarification" as described by Judge Youchah, but rather an amendment entered in error because leave was granted without requiring Michelle to satisfy the good-cause standard. *See id.* at 3–4.

In response to both objections, Michelle argues that Judge Youchah's order should be affirmed because the defendants knew that it was her intention to proceed in both her individual and official capacity, but she nonetheless filed a motion to ensure clarity on that issue, and further that the defendants failed to identify any prejudice by permitting her to proceed in

---

[8] *See* ECF No. 80 at 2 n.1 (Michelle advising she would not be appealing this decision).

[9] Counsel for Reyes advises that her first name is spelled incorrectly. The Clerk of Court is kindly directed to correct the spelling of defendant Reyes's first name to Britany.

her individual capacity if amendment is allowed. *See* ECF No. 84. She also argues that courts routinely permit this type of "non-substantive" amendment to correct a scrivener's error. *Id.* at 6–7.

I deny the defendants' appeals to Judge Youchah's order permitting Michelle to proceed in her official and individual capacity because the defendants fail to show that Judge Youchah's thorough reasoning was contrary to the law or clearly erroneous. Although they correctly cite and explain that Federal Rule of Civil Procedure 16 requires a party seeking to substantively amend a pleading after expiration of the scheduling order to demonstrate good cause, Judge Youchah's well-reasoned order explains that, in this case, the proposed amendment was not substantive in nature but rather a clarification of a fact the parties already knew—that is, that Michelle was proceeding in her official and individual capacity. Indeed, as explained in the order, the defendants were already aware Michelle was proceeding in both capacities based on requests for production and communications between the parties regarding what was at issue (i.e., the defendants' position that Michelle had placed the nature and value of her marriage to John at issue and propounding discovery that was only relevant if Michelle was proceeding in her individual capacity).

For those reasons, I find that the magistrate judge's R&R was neither clearly erroneous nor contrary to law, so her recommendation that I allow Michelle to proceed in both her individual and official capacity as the administrator John's estate is adopted and affirmed.

**C.  The unopposed motion to strike is granted.**

The City moves to strike Michelle's reply to her R&R-1 objections because it was filed without leave of court. ECF No. 82. The City correctly argues that replies to responses to report and recommendation objections are allowed only with leave of court. *See id.* at 2 (citing LR IB 3-1(a)). Michelle did not file an opposition or otherwise respond to the motion. Under Local Rule 7-2(d), "[t]he failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a

consent to the granting of the motion." LR 7-2(d). Accordingly, applying these rules, the City's motion to strike is granted.

III.    Conclusion

IT IS THEREFORE ORDERED that the objections **[ECF Nos. 70, 78, 80] are denied and/or overruled**.

IT IS FURTHER ORDERED that the magistrate judge's orders and reports and recommendations **[ECF Nos. 69, 71] are affirmed and accepted in full**. The plaintiff's motion to amend **[ECF No. 45] is denied in part** to the extent that it seeks to add a claim under Title II of the Americans with Disabilities Act. The plaintiff's motion to amend **[ECF No. 50] is denied in part** to the extent that it seeks to add two new plaintiffs; and Judge Youchah's order is affirmed in that Michelle Greybill is proceeding in her individual capacity as well as the administrator of the estate of John Greybill.

IT IS FURTHER ORDERED that the defendants' unopposed motion to strike **[ECF No. 82] is GRANTED**. The plaintiff's reply **[ECF No. 81] is stricken**.

The Clerk of Court is kindly directed to correct the spelling of defendant Reyes's first name to Britanny.

Dated: May 27, 2026

                        _____
Cristina D. Silva
United States District Judge